IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

AURELIO CHAPA         §
        §
v.                        §        C.A. NO. C-12-009
        §
MICHAEL J. ASTRUE     §

## OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Aurelio Chapa brought this action on January 11, 2012, seeking review of the Commissioner's final decision that he is not disabled and, therefore, not entitled to Title II Disability Insurance Benefits or Title XVI Supplemental Security Income Benefits. (D.E. 1). On July 17, 2012, defendant filed a motion for summary judgment. (D.E. 14). Plaintiff filed a motion for summary judgment on August 21, 2012, (D.E. 17), and defendant submitted a response in opposition. (D.E. 18). For the reasons that follow, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). After consent by the parties, (D.E. 8, 12), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 13); see also 28 U.S.C. § 636(c).

## II.  BACKGROUND

On February 9, 2005, at the age of fifty-two, plaintiff filed a claim with the Social Security Administration for Title II and Title XVI disability benefits, alleging a disability period beginning February 6, 2004. Tr. 59. He claimed disability for diabetes, colon cancer, colostomy, back problems, and a hernia. Tr. 40. The claim was denied on March 30, 2005. Tr. 22. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 12,

2005, and one was held on December 6, 2006.  Tr. 32, 910.  On May 25, 2007, the ALJ issued a

decision denying disability benefits.  Tr. 13-19.  After the Social Security Administration denied

Plaintiff's request to review the ALJ's decision, Tr. 4-5, he filed an action in district court.

Chapa v. Astrue, No. C-08-346, at *2 (S.D. Tex. July 14, 2009).  A memorandum and

recommendation was issued recommending that the case be remanded to the Appeals Council.

On July 29, 2009, this Court adopted the recommendation.  Chapa v. Astrue, No. C-08-346 (S.D.

Tex. July 29, 2009).  The Appeals Council in turn vacated its original decision and remanded the

case to the ALJ.  Tr. 798.

On October 16, 2008, plaintiff filed a subsequent application for disability insurance

benefits and for supplemental security income, both of which alleged disability beginning on

February 6, 2004.  Tr. 772.  After these claims were denied, he filed a request for a hearing on

July 9, 2009.  Id.  Because his claims were duplicative of those before the Social Security

Administration on remand, the Appeals Council consolidated them for consideration by the ALJ.

Tr. 798.  A hearing was held on March 26, 2010.  Tr. 932.  On April 19, 2010, the ALJ issued a

decision denying disability benefits.  Tr. 772-781.  Plaintiff appealed the decision on November

30, 2010.  Tr. 764.  The Appeals Council denied his request for review on December 1, 2011.

Tr. 760.  On January 11, 2012, plaintiff filed this action.  (D.E. 1).

A.    **Plaintiff's Medical Records.**

Plaintiff is fifty-nine years old and has a high school education.  Tr. 44.  He has past

relevant work as a convenience store manager.  Tr. 747.  He alleges disability based on diabetes,

colon cancer, colostomy,[1] back problems, and a hernia.  Tr. 40.

---

[1] A colostomy is "the surgical creation of an opening between the colon and the surface of the body; also used to refer to the opening, or stoma, created."  Dorland's Illustrated Medical Dictionary 380 (29th ed. 2000) [hereinafter Dorland's].

2

On February 3, 2004, plaintiff went to Christus Spohn Hospital Kleberg complaining of rectal bleeding and anemia.  Tr. 138-39.  Following an examination, Dr. Felino C. Oballo diagnosed him with a lesion in the rectum, and took a biopsy.  Tr. 140.  On February 4, 2004, based on the biopsy results, Dr. Andres D. Aquino determined that he had rectal cancer.  Tr. 132. On February 6, 2004, Dr. Oballo performed an abdominal perineal dissection to remove the tumor, leaving plaintiff with a colostomy.  Tr. 123.

On April 19, 2004, a MediPort[2] was surgically placed in plaintiff's chest to enable him to receive chemotherapy treatment.  Tr. 115.  On June 11, 2004, Dr. Darla D. Green noted that plaintiff suffered no nausea or problems associated with chemotherapy.  Tr. 164.  On July 8, 2004, she indicated that his colostomy was well-placed and active, and that he performed his own self-care without any problems.  Tr. 158.  He was undergoing chemotherapy treatment at that time.  Id.  Following chemotherapy, he received radiation treatment from August 3, 2004 to September 14, 2004.  Tr. 119.  Dr. Daniel Garlitos noted that he tolerated the treatments well, reporting little diarrhea.  Tr. 114.

On September 22, 2004, Dr. Jen-Yi Huang performed a computerized tomography scan of his abdomen and pelvis that revealed abnormal liver density and a ventral hernia[3] with herniation of the small bowel loops.  Id.  Dr. Huang noted that plaintiff had a post-abdominal perineal resection with a sigmoid colostomy in place.  Tr. 156.

On November 2, 2004, plaintiff complained of pain and drainage at the surgical site of his colon resection.  Tr. 261.  On November 3, 2004, he underwent excision and drainage of a

_____

[2] A MediPort is "a device that is implanted under [the] skin so that medications can be delivered directly into [the] blood system."  Roswell Park Cancer Center, "MediPort," available at http://www.roswellpark.org/ Patient_Care/Types_of_Cancer/Esophageal/Esophageal_Center_Patient_Handbook/Procedures/Mediport.

[3] A ventral hernia is a "herniation of omentum, intestine, or some other internal body structure through the abdominal wall."  Dorland's, at 811.

presacral abscess.  Tr. 109.  On November 7, 2004, Dr. Jose M. Lozano indicated that plaintiff had developed methicillin resistant Staphylococcus aureus.[4]  Tr. 256.  He prescribed 1000 milligrams of Cipro XR daily for fifteen days.  Id.  Plaintiff underwent wound care from November 13, 2004 until February 22, 2005 that required changing his dressings frequently, at least a few times a week.  Tr. 308-367.  On December 10, 2004, Dr. Lozano signed a medical release indicating that plaintiff's disability was not permanent but was expected to last more than six months.  Tr. 103.  He listed plaintiff's disabling diagnosis as colon cancer, with secondary disabling diagnoses of a colostomy and a pilonidal abscess.  Id.

**B.    The December 6, 2006 Administrative Hearing.**

On December 6, 2006, ALJ Gary L. Vanderhoof held a hearing on plaintiff's disability claim.  Tr. 743.  He was represented by an attorney, Mark A. DiCarlo.  Id.  A vocational expert, Howard Marnan, testified.  Id.  A medical expert did not testify.

Plaintiff testified that he had a colostomy bag, was diabetic, and was taking medication for high blood pressure and cholesterol.  Tr. 745.  He indicated that he cleaned his colostomy bag approximately three times a day when he had bowel movements.  Id.  It takes him fifteen or twenty minutes to clean it.  Tr. 746.  He prefers a private room instead of a public restroom to clean his bag.  Id.  He explained that he does not feel right in public because sometimes the bag will bulge up with a stool or with gas.  Tr. 747.  He also must wear baggy clothes to cover the colostomy bag.  Id.  He noted that he could not squat down much because of the bag.  Tr. 748.  He does odd jobs around the house, but he has trouble bending down because he is afraid his colostomy bag will pop open, which has previously happened.  Id.  He stated that his blood sugar is uncontrolled, and that on the morning of the hearing it was 256.  Id. at 750.  He indicated that

---

[4] Staphylococcus aureus is "a species [of bacteria] comprising the yellow-pigmented, coagulase-positive pathogenic forms of the genus, causing serious suppurative infections and systemic disease."  Dorland's, at 1694.

he had worked his whole life until he got cancer.  Id. at 750-51.  His cancer is currently in

remission.  Id. at 751.

      The ALJ posed the following hypothetical to the vocational expert:

> I'm going to restrict him from outside work in the sun continually
> as a condition of employment.  And I'm going to have him, for this
> hypothetical, maximum lift and carry 20 pounds occasionally, ten
> pounds frequently, which is roughly a gallon of milk which weighs
> 8.8 pounds.  I'm going to also – he does say he could climb a
> ladder, but I'm going to restrict that to not frequent at all of
> climbing ladders, ropes or scaffolds or working at unprotected
> heights or danger [sic] moving machinery.  For this hypothetical,
> he could stand and walk six of eight, sit six of eight with a normal
> break periods [sic].

Tr. 754.

      The vocational expert opined that such an individual would not be capable of plaintiff's

past work as a convenience store manager.  Id.  However, he indicated that plaintiff would be

able to perform some work within those limitations.  Id.  He identified the jobs of cashier, ticket

seller, and hand packager as jobs plaintiff could do, and indicated that there were 60,000; 6,000;

and 10,000 available positions for each of those jobs respectively in the Texas economy.  Tr.

755.  All of these jobs are classified as light, unskilled work.  Id.

      Plaintiff would be subject to termination if he missed more than two days a month.  Tr.

756.  The vocational expert also explained that if a person was required to take up to three

unscheduled breaks of twenty minutes each during the day, he would be unable to do any jobs in

the national economy.  Tr. 757-58.

**C.**    **The ALJ's First Decision.**

      On May 25, 2007, the ALJ issued an unfavorable decision.  Tr. 13.  He found that

plaintiff had sufficient quarters of coverage to remain insured through December 31, 2009, but

that he had not been under a disability from his alleged onset date through the date of the ALJ's

decision and, therefore, he was not entitled to disability insurance benefits.  Id.

The ALJ concluded that plaintiff suffered from the severe impairments of diabetes mellitus, hypertension, and rectal cancer in remission.  Tr. 15.  However, none of his impairments met or equaled a listed impairment.  Tr. 16; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ determined that plaintiff had "the residual functional capacity to perform light unskilled work.  He can lift and carry 20 pounds occasionally and 10 pounds frequently with usual breaks.  He can stand, walk, and sit 6 hours of an 8-hour workday.  He cannot work outside.  He must avoid heights and dangerous/moving machinery."  Tr. 16.  He found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by plaintiff, but that his statements regarding the intensity, persistence, and limiting effects of such symptoms were not entirely credible.  Tr. 17.  He determined that plaintiff could not perform his past relevant work as a convenience store manager.  Id.

The ALJ then made the necessary findings to use the medical-vocational guidelines, or "grid rules," as a framework for determining whether plaintiff could perform work available in the national economy in substantial numbers.  Tr. 18; see also 20 C.F.R. §§ 404.1563, 416.963. He found that the vocational expert had testified that given plaintiff's age, education, and work experience, plaintiff could perform a number of given jobs that existed in significant numbers in the national economy.  Id.  Thus, he concluded that "[a] finding of 'not disabled' is therefore appropriate."  Id.

**D.     This Court's First Decision Remanded The Claim To The Social Security Administration.**

On July 29, 2009, District Judge Janis Graham Jack issued an order adopting this Court's memorandum and recommendation that plaintiff's claims be remanded for consideration of whether the colostomy was a severe impairment, or, in the alternative, whether the colostomy was the result of treatment for an impairment that is severe.  Chapa, No. C-08-346, at *16-17.  In addition, the Court recommended that on remand the ALJ should address the implications of plaintiff's testimony regarding the time it takes to clean his colostomy bag, including the vocational expert's testimony that a person who required three unscheduled twenty minute breaks in a workday could not find work in the national economy.  Id.

**E.     The March 26, 2010 Administrative Hearing.**

After the case was remanded, on May 5, 2009, plaintiff was examined by Dr. Lozano, who remarked that he was "able to sit, stand, move about, lift, carry, handle objects, hear, and speak well." Tr. 900.  He found that plaintiff could "do heel and toe walking, squatting, hopping, and tandem walking," and noted that he "[did] not appear in pain." Id.  However, his diabetes and hypertension were uncontrolled at the time, and he informed Dr. Lozano that he could not afford to buy his medication.  Id.  Plaintiff's blood pressure was elevated, but he showed no resulting end organ damage.  Furthermore, he suffered no complications from his diabetes or any side effects of medication.  Tr. 902.

On March 26, 2010 the ALJ held a second hearing on plaintiff's disability claim.  Tr. 932.  Plaintiff was again represented by Mr. DiCarlo.  Id.  A vocational expert, Donna Johnson, and a medical expert, Dr. Arthur Briggs, both testified.  Id.

Based on a review of plaintiff's medical records, Dr. Briggs indicated that plaintiff could "sit, stand, move, lift, carry, [and] handle objects well," and that despite his colostomy bag, "he

7

could do light work with having a proximity to a bathroom." Tr. 935.  The condition of

bathroom proximity was based on the fact that plaintiff would need to empty his colostomy bag

an average of two to three times each day, for approximately ten minutes.  Tr. 937.  Moreover,

Dr. Briggs explained that "having a [c]olostomy ... does not preclude gainful employment if

adequate nutrition and function of the stomach is proper," and that there is "no evidence that

[plaintiff's] stomach is not functioning ... [or] that he has a nutritional abnormality."  Tr. 936.

He noted that it is not common for a colostomy to result in pain absent stomach problems, but

that there may be some burning sensation.  Tr. 940.  However, he suggested that plaintiff would

not be able to climb ladders and would need close proximity to a restroom.  Tr. 936.  Dr. Briggs

concluded that plaintiff does not meet the requirements of Listing 5.00E4 pertaining to

colostomies.  Tr. 939; Revised Medical Criteria for Evaluating Digestive Disorders, 72 FR

59398-01, 59424 (Oct. 19, 2007) (to be codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1) ("[a]

colostomy does not preclude any gainful activity if you are able to maintain adequate nutrition

and function of the stoma").

Plaintiff testified that he lives at home with his wife and seventeen-year old son, and that

he does not work.  Tr. 940-41.  He indicated that his daily activities consist of doing household

chores, including rinsing dishes, mowing the lawn using a riding mower, and going grocery

shopping.  Tr. 941.  He acknowledged that while grocery shopping he could pick up a ten-pound

bag of charcoal.  Tr. 942.  He explained that he would be able to lift an equally heavy object for

about two hours and forty-five minutes out of an eight-hour work day, but that his doctor had

ordered him not to lift anything over fifteen pounds.  Tr. 943-44.  Plaintiff acknowledged that he

would be able to stand and walk for two to six hours each day.  Id.

Plaintiff noted that he suffered some problems with his colostomy, including minor

irritation and itching on his stomach and difficulty bending down below six inches from the floor when the bag is full.  Tr. 942, 946.  He must empty his bag up to four times throughout the day and it takes him about ten to fifteen minutes each time.  Tr. 945.  Plaintiff takes medication for his blood pressure and insulin for his diabetes.  Id.  Though his blood pressure is high and uncontrolled, he does not feel any physical effects as a result, nor does he suffer from any side effects from his medications.  Id.  Plaintiff indicated that he would be able to perform his past job as a convenience store manager, although he would probably have to relocate for such a job and he did not wish to do so.  Tr. 952-53.

Donna Johnson, a vocational expert, was presented with the following hypothetical by the ALJ:

> [A]ssume an individual who alleges disability at age 50 currently 56, a high school education; past relevant work history [of Convenience Store Manager-Assistant Manager].  I want to impose this requirement[]. [Plaintiff] had indicated in the past he shouldn't work in the sun continuously outside as a condition of employment, so I'm going to pretty much have more of an inside employment.  Also, for this first hypothetical pursuant to the doctor's testimony can lift and carry 20 pounds occasionally and 10 pounds frequently and he would have to have a work area that would give him proximity to a bathroom.  He should not climb ladders, ropes or scaffolds.  Within the confines of [] my first hypothetical, I ask you could he perform any of his past relevant work either as he performed it or as it normally would be performed according to the dictates of the Dictionary of Occupational Titles?

Tr. 948.  She testified that the Convenience Store Manager job is "light and skilled and ... falls within the parameters [of the hypothetical]."  Tr. 948-49.  However, an individual who missed more than about two days of work each month would be subject to termination from the position.  Tr. 949.  Additionally, an individual who needed to take more than two fifteen-minute breaks and a lunch break each day would probably be subject to termination not only in that position,

but in all jobs in the national economy as well, absent accommodation.  Tr. 950.

Ms. Johnson testified that an individual who is age fifty or fifty-six and "limited to sedentary work with a high school education," but otherwise the same as in the initial hypothetical, would not be able to perform the Convenience Store Manager job.  Tr. 952. Moreover, she explained that "the occupational base ... for a job requiring light work [and] which requires almost immediate access to a bathroom" is "significantly eroded."  Id.  On the other hand, an individual whose only additional limitation was that he had difficulty bending and squatting would still be able to perform the Convenience Store Manager job.  Id.

Finally, Ms. Johnson indicated that if plaintiff were sedentary, he would be able to perform other lower-level, semi-skilled jobs to which his skills, including basic math, record keeping, and documenting inventory, would transfer.  Tr. 954-55.  These jobs included a sedentary cashier, a check cashier, and a food checker.  Id.  There are 5,800, 5,000, and 6,300 of these jobs available state-wide, respectfully; and 300,000, 400,000, and 500,000 of these jobs available nationally.  Tr. 955.

**F.    The ALJ's April 19, 2010 Decision.**

On April 19, 2010, the ALJ issued an unfavorable decision for plaintiff, concluding that he was not "disabled" within the meaning of the Social Security Act between February 6, 2004, the alleged onset date, through the date of its decision.  Tr. 772-73.  The ALJ began by finding that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009, Tr. 774, and that plaintiff has not engaged in substantial gainful activity since February 6, 2004.  Tr. 775.  He next concluded that plaintiff suffered from several severe impairments, consisting of colorectal cancer in remission with resection and a colostomy bag, diabetes, hypertension, and had recovered from a hernia.  Id.

At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met any of the listings.  Id.  The ALJ specifically examined Listing 5.00E4, pertaining to digestive disorders; Listing 9.08, pertaining to diabetes mellitus; and Listing 4.01, pertaining to cardiovascular system.  Id.  He explained that the record did "not show the presence of motor, sensory, or reflex loss or inability to perform fine and gross movements effectively or inability to ambulate effectively at listing level severity."  Id.  In addition, he noted that "the medical expert testified that none of the claimant's impairments meets or equals any of the listings."  Id.

The ALJ next calculated plaintiff's Residual Functional Capacity ("RFC"), finding him able to lift and carry twenty pounds occasionally and ten pounds frequently.[5]  Id.  He further found him able to stand, walk, or sit for six hours in a work day with normal breaks with the option to either sit or stand otherwise.  Id.  In addition, the ALJ determined that plaintiff requires a work area in close proximity to a restroom and that he must work indoors and out of continuous exposure to the sun.  Id.

In reaching these conclusions, the ALJ considered the plaintiff's testimony and medical records, as well as Dr. Briggs's assessment.  Tr. 776.  The ALJ specifically found that while plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms ... [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Id.

Although the ALJ acknowledged that plaintiff wears a colostomy bag and occasionally

---

[5] Though the ALJ's finding concludes that plaintiff has the residual functional capacity to "lift/carry 10 pounds occasionally and 20 pounds frequently," this statement appears to be a clerical error in light of the supporting discussion.  In particular, the ALJ based his findings on Dr. Briggs's testimony, which indicated that plaintiff "is able to lift/carry 10 pounds frequently and 20 pounds occasionally."  Tr. 778.

suffers from weakness and fatigue as well as irritation and itching around the stoma, "there is no evidence that the stoma is not functioning or that the claimant has a nutritional abnormality or that he has reported having significant pain or blood or burning around the stoma." Tr. 777.  In addition, the ALJ took into account plaintiff's diabetes, hernia, and hypertension when limiting him to a wide range of light or sedentary work.  Id.  He noted that in regards to plaintiff's diabetes, he has not suffered from any organ damage or eye problems, and that there is no evidence of peripheral neuropathy or renal problems.  Id.  Moreover, plaintiff suffers no side effects from his medication.  In regards to plaintiff's hypertension, the ALJ acknowledged that while it is poorly uncontrolled, he experienced no symptoms, dizziness, or other physical effects. Id.

The ALJ determined that despite plaintiff's claims, he did not have a fifteen-pound weight lifting restriction.  He had been instructed not to lift anything over fifteen pounds after his hernia surgery in July 2006 for the duration of his recovery.  Though Dr. Lozano had indicated he still had the restriction in 2008, the doctor did not explain why.  Tr. 777-78.  By May 2009, Dr. Lozano made no mention of any lifting restriction and observed that plaintiff did not have any exertional limitations.  Tr. 778.

In addition, the ALJ considered Dr. Briggs's opinion testimony and concluded that it was "credible, persuasive, and well supported by the record."  In particular, he noted that Dr. Briggs had indicated that, absent stoma or nutritional problems, a colostomy does not normally preclude work.  Tr. 778.  Moreover, the bag itself should not cause pain, and his medical records indicate that he should be able to lift or carry ten pounds frequently and twenty pounds occasionally, and stand, walk, or sit for six hours in an eight-hour workday with normal breaks.  Id.

The ALJ explained that his RFC assessment took into account plaintiff's own testimony

12

that he could perform his previous job, as well as his daily activities.  Tr. 779.  For example, plaintiff acknowledged that he had no problems standing and walking and that he goes for long walks in the mornings and afternoons.  Id.  Furthermore, he performs daily chores that include rinsing dishes, mowing the lawn on a riding mower, shopping, driving, and lifting ten-pound charcoal bags.  Id.  In concluding his assessment, the ALJ explained that "the fact that [plaintiff] wears a colostomy bag has been taken into account ... in limiting him to work with nearby bathroom facilities."  Id.

The ALJ then concluded that plaintiff was able to perform his past relevant work as an assistant manager of a convenience store because it does not require the performance of work-related activities precluded by plaintiff's RFC, and because plaintiff testified that he was capable of doing so.  Id.  In addition, after considering his age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that he could have performed.  Tr. 780.  He specifically referenced the vocational expert's testimony that an individual with plaintiff's attributes and RFC could perform the duties of jobs such as cashier, check cashier, and food checker.  Tr. 780-81.  Consequently, while noting that plaintiff's "additional limitations do not allow [him] to perform the full range of light work," he was not "disabled" as defined by the Social Security Act.  Tr. 781.

### III.  LEGAL STANDARDS

**A.      Social Security Act Disability Benefits Requirements.**

The same law and regulations govern whether an individual is considered disabled and therefore entitled to benefits under either the disability insurance benefits or the supplemental security income benefits provisions of the Social Security Act.  Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (per curiam) (citations omitted).  Specifically, the Social Security Act

establishes that every individual who is insured for disability insurance benefits, has not attained

the set retirement age, has filed an application for disability benefits, and is under a disability is

entitled to receive disability benefits.  42 U.S.C. § 423(a)(1).

Disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that a claimant is not

disabled if that person can perform jobs available in the national economy:

> An individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.  For purposes of the preceding sentence ... "work which
> exists in the national economy" means work which exists in
> significant numbers either in the region where such individual
> lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**B.      Social Security Administration Regulations And Rulings.**

To determine if an individual suffers from a disability, as defined by the Social Security

Act, the Commissioner has promulgated regulations containing a five-step sequential process to

be used by the Social Security Administration.  20 C.F.R. §§ 404.1520, 416.920.  A disability

finding at any point in the five-step sequential process is conclusive and ends the analysis.  Villa

v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted).

A claimant bears the burden of proof on the first four steps.  Bowling v. Shalala, 36 F.3d

431, 435 (5th Cir. 1994) (per curiam) (citation omitted).  The claimant must prove that: (1) he is

14

not presently engaged in substantial gainful activity; (2) he suffers from an impairment or impairments that are severe; and that either (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to the claimant's RFC, the impairment prevents the claimant from doing any past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowling, 36 F.3d at 435; Villa, 895 F.2d at 1022.

The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities."  Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000) (citations omitted).  The Commissioner may find that a claimant's impairment fails to meet the significant limitation requirement of step two "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  Id. at 391 (citation omitted).

Step three requires a claimant to prove that any of his impairments meet one or more of the impairments listed in the regulations, which include both physical and mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The criteria for determining the severity of the listed mental impairments include whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and repeated episodes of decompensation.  Id. at Pt. A § 12.00(C).  The regulation defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  Id. at Pt. A § 12.00(C)(4). The claimant must present evidence that the impairment is a long-term problem rather than a

temporary set-back, but "does not have to show a 12 month period of impairment unmarred by any symptom-free interval." Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986) (citations omitted).

Pursuant to the fourth step, a claimant who is unable to show that his impairment meets one of the listed impairments must show that he is unable to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant's RFC is taken into consideration to determine whether his impairments may cause physical and mental limitations that affect his ability to work. 20 C.F.R. §§ 404.1545, 416.945. The RFC is the most a claimant can do despite any limitations caused by an impairment. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). All relevant evidence in the record, including medical and non-medical evidence, is taken into consideration by the Commissioner when making a determination of a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner must consider all of a claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and non-medical evidence in the record. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). "[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. at *2. When a claimant's statements concerning symptoms and their associated limitations "are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id.

The adjudicator's discussion of a claimant's RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms. SSR 96-8p, 1996 WL

374184, at *7 (S.S.A. July 2, 1996).  This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record.  Id.

If the claimant is able to meet his burden under the first four elements, the burden shifts to the Commissioner for the fifth.  Bowling, 36 F.3d at 435.  The fifth step requires the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, if the claimant can make an adjustment to other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the claimant is disabled.  Id.

## C.     Judicial Review Of The Commissioner's Decision.

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  See Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); accord Carey, 230 F.3d at 135.  The Fifth Circuit has described this burden as more than a scintilla, but less than a preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (citations omitted).  A finding of "no substantial evidence" occurs "only where there is a conspicuous absence of credible choices or no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation omitted).

17

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner and affirm the findings.  See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted).  In applying the substantial evidence standard, courts scrutinize the record to determine whether such evidence is present.  They do not, however, re-weigh the evidence, try the issues de novo, or substitute their judgment for that of the Commissioner.  Id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted). Factual conflicts that exist in the record are for the Commissioner and not the Court to resolve. Masterson, 309 F.3d at 272.  It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history."  Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citation omitted).

## IV.  ANALYSIS

**A.    Plaintiff's Motion For Summary Judgment Is Denied.**

Once the Appeals Council denied plaintiff's request for review on October 6, 2011, Tr. 760-63, the ALJ's decision became the Commissioner's final decision.  See Sims v. Apfel, 530 U.S. 103, 107 (2000) ("if ... the Council denies the request for review, the ALJ's opinion becomes the final decision") (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a)).  He challenges the Commissioner's decision on the following three grounds.

First, plaintiff argues that the ALJ was barred by res judicata from finding that plaintiff could perform past relevant work because he had come to the opposite conclusion in his May 25, 2007 opinion.  (D.E. 17, at 5).  Defendant responds that the ALJ was not bound by his previous decision.  (D.E. 18, at 2).

Second, plaintiff contends that the ALJ's RFC assessment and his conclusion that he could perform either past relevant work or sedentary work was not supported by substantial evidence because he failed to consider: (1) plaintiff's non-exertional impairments due to his colostomy, including irritation and itching around the stoma, and limited bending; (2) the effect of his obesity in conjunction with his diabetes, hypertension, and hernias, pursuant to SSR 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002); (3) his treatment, to the extent that it would disrupt his ability to regularly attend a job; and (4) the fact that he must clean his colostomy bag up to four times a day, which would prohibit him from working a full day even with normal breaks. (D.E. 17, at 4-5).  Defendant argues in response that the ALJ did consider plaintiff's colostomy bag and the frequency and duration of his cleaning regimen.  (D.E. 18, at 2-3).  Defendant does not address plaintiff's other claims.  Id.

Third, regarding the ALJ's conclusion that plaintiff could perform other work, plaintiff alleges the ALJ erred by characterizing his basic math, record keeping, and inventory documentation skills as "skills" pursuant to SSR 82-41, 1982 WL 31389 (S.S.A. Jan. 1, 1982), because they only involve carrying out simple job duties.  (D.E. 17, at 4).  Defendant responds that because the ALJ found that plaintiff could perform past relevant work, his claim is moot. (D.E. 18, at 2).

### 1.    The Commissioner was not bound by his previous finding regarding whether plaintiff could perform past relevant work.

First, plaintiff argues that the ALJ erred in finding that he could perform past relevant work because he was bound by his May 25, 2007 determination to the contrary.  Defendant argues that the ALJ's review was de novo, and that he was therefore not bound by his prior decision.

In the context of social security cases, res judicata applies only when there has been a

"previous determination or decision ... about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action."  20 C.F.R. § 416.1457(c)(1).  Where a claimant seeking disability benefits appeals an unfavorable decision by an ALJ to the Appeals Council and then a district court, the ALJ's initial decision does not constitute a final decision for the purposes of res judicata.  Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009) (citing § 416.1455(b)); see also Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir. 1991) (per curiam) (rejecting argument that Secretary of Social Security was bound by the previous ALJ's finding after the Appeals Council vacated its denial of benefits based on the ALJ's decision and remanded the case for redetermination on all issues); Barrett v. Thomas, 809 F.2d 1151, 1157 (5th Cir. 1987) (district court was free to alter determinations made in its original judgment on issues not determined on appeal).

While the Commissioner is not bound by a previous decision that is not final, on remand his decision may be limited by the law-of-the-case doctrine and the mandate rule.  "'The law-of-the-case doctrine prohibits a court on remand from reexamining an issue of law or fact decided on appeal,'" while the mandate rule "provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate, and may not disregard the explicit directives of the court."  Brown v. Astrue, 597 F. Supp. 2d 691, 695 (N.D. Tex. 2009) (citing United States v. Becerra, 155 F.3d 740, 752-53 (5th Cir. 1998), abrogated on other grounds by United States v. Farias, 481 F.3d 289 (5th Cir. 2007)).  Both doctrines have been applied to judicial review of administrative decisions.  Id. at 695-96 (discussing application of both doctrines in the context of denial of social security benefits); see also Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir. 2002) (applying the law-of-the-case doctrine and mandate rule to judicial review of administrative decisions); Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998)

(addressing law of the case in social security appeal); Brachtel v. Apfel, 132 F.3d 417, 420 (8th Cir. 1997) (declining to apply the law of the case doctrine).

In the context of disability benefits proceedings, the law-of-the-case doctrine requires that when a district court makes substantive findings on the merits, the ALJ is bound by those findings on remand.  Brown, 587 F. Supp. 2d at 699.  Moreover, while "the merits of a matter need not be explicitly decided by the district court to become law of the case," for a matter to be decided by necessary implication, it "must at least have been *considered* by the court."  Id. (emphasis in original) (citations omitted).  Therefore, when an issue is not contested on appeal, and, as a result, the district court does not consider it, it does not implicitly become law-of-the-case that binds the ALJ.  See In re England, 153 F.3d 232, 235 (5th Cir. 1998) (court made no implicit finding as to an issue it did not consider); Platoro Ltd. v. Unidentified Remains of a Vessel, 695 F.3d 893, 898 n.4 (5th Cir. 1983) (declining to apply law-of-the-case doctrine where issue was not contested before the court on appeal).

On the other hand, the mandate rule is broader than the law-of-the-case doctrine, and it obligates the ALJ "to implement on remand both the letter and the spirit of the court's order," "[r]egardless of whether an issue was decided by a court."  Brown, 587 F. Supp. 2d at 702 (citing Becerra, 155 F.3d at 753).  Nevertheless, "'[w]hen further trial-court proceedings are appropriate after remand, the appellate mandate commonly leaves the trial court free to decide matters that were not resolved on appeal.'"  Id. at 703-04 (quoting 18B Charles Alan Wright, et al., Federal Practice and Procedure § 4478.3, at 750 (2d ed. 2002)).  Thus, "'[i]f a matter is ... left open, the lower court is free to reconsider its own earlier determination.'"  Id. at 704 (quoting 18B Wright, et al., at 754); see also Barrett, 809 F.2d at 1157 (appellate court mandate did not preclude district court from altering determinations made in its original judgment on issues not

determined on appeal).

Here, because plaintiff appealed the ALJ's May 25, 2007 decision, it did not constitute a final decision for the purpose of <u>res judicata</u>.  Therefore, the ALJ's previous determination that plaintiff was not capable of performing past relevant work was not binding on remand.  Moreover, the ALJ's ability to reexamine the issue was not otherwise limited by the law-of-the-case doctrine or the mandate rule.  For example, the law-of-the-case doctrine does not apply because this Court did not make any explicit findings on the merits regarding plaintiff's past relevant work.  Instead, the Court remanded the case on other grounds–to consider whether plaintiff's colostomy bag was a severe impairment and what effect it might have on his RFC.  It made no implicit findings, either, because the issue of past relevant work was not under consideration on appeal.  In addition, the ALJ implemented the letter and spirit of the district court's order pursuant to the mandate rule by taking into account evidence of plaintiff's colostomy bag as a severe impairment and assessing its effect on his RFC.  Nothing in this Court's order indicates that on remand the ALJ was precluded from re-evaluating plaintiff's ability to perform past relevant work.  <u>See</u> <u>Brown</u>, 597 F. Supp. 2d at 704 (holding that the district court's order did not limit the remand proceedings to the issues specified in the order, and that, therefore, reevaluation of plaintiff's RFC was not barred).  Therefore, absent application of the law-of-the-case doctrine or the mandate rule, the ALJ was not precluded from reevaluating its findings regarding plaintiff's ability to perform past relevant work.

Moreover, the ALJ's subsequent determination that plaintiff could perform past relevant work was supported by new evidence presented on remand, including plaintiff's own testimony that he was capable of performing his previous job.  In light of this evidence, the ALJ's determination was supported by substantial evidence and was keeping with principles of finality

and fairness.  See Lively v. Secretary of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir.

1987) (explaining that "[p]rincples of finality and fundamental fairness ... indicate that the

Secretary must shoulder the burden of demonstrating ... [new evidence] to sustain a finding

contrary to the final earlier finding" of RFC); accord Shelton v. Astrue, No. 1:08-CV-403, 2011

WL 1234910, at *9 (E.D. Tex. Jan. 31, 2011) (unpublished) (finding that absent new evidence

regarding a plaintiff's physical limitation in a second disability benefits hearing, altering a prior

favorable RFC determination would violate principles of fairness and finality), adopted by

Shelton v. Astrue, No. 1:08-CV-403, 2011 WL 1191946 (E.D. Tex. Mar. 30, 2011)

(unpublished).

 Therefore, the ALJ did not err in finding that plaintiff could perform past relevant work.

 **2. Substantial evidence supports the Commissioner's findings regarding plaintiff's RFC as well as his ability to perform past relevant work or other sedentary work.**

 Plaintiff argues that the ALJ erred in assessing his RFC and by concluding that he was

capable of performing his past relevant work or other sedentary work because he failed to

consider: (1) plaintiff's non-exertional impairments caused by his colostomy bag, including

irritation and itching around the stoma as well as his limited ability to bend down at the waist;

(2) the effects of his obesity in conjunction with his diabetes, hypertension, and hernia, pursuant

to SSR 2-01p; (3) how his treatment disrupts his ability to regularly attend work; and (4) the

effect of his colostomy bag cleaning regimen on his ability to work a full day even with normal

breaks.  (D.E. 17, at 4-5).  Defendant argues in response that the ALJ did take plaintiff's

colostomy bag into account, and that the ALJ's opinion was otherwise supported by substantial

evidence.  (D.E. 18, at 2-3).

 First, contrary to plaintiff's assertions, the ALJ acknowledged the fact that his colostomy

bag caused irritation and itching around the stoma and limited him from bending over when it was full.  However, he noted that despite these limitations plaintiff engaged in a wide range of daily activities "that are not limited to the extent one would expect, given the complaints of disabling symptoms and impairments."  Tr. 779.  For example, plaintiff testified that he rinsed dishes, mowed the lawn, and went grocery shopping.  See Donner v. Barnhart, 285 F. Supp. 2d 800, 810-11 (S.D. Tex. 2002) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.") (citing Reyes v. Sullivan, 915 F.2d 151, 154 (5th Cir. 1990) (per curiam)), aff'd Donner v. Barnhart,104 F. App'x 371 (5th Cir. 2003) (per curiam) (unpublished).  Moreover, plaintiff indicated that the irritation on his stomach is not very severe, explaining that "[i]t is just minor."  Tr. 942.  In addition to this evidence, the ALJ considered Dr. Briggs's testimony that a colostomy bag does not preclude gainful employment or cause pain unless stoma is not functioning normally or the individual suffers from a nutritional abnormality, and that plaintiff suffered from neither.  Thus, though the ALJ did consider plaintiff's non-exertional impairments, including the irritation around his stoma and limited ability to bend down, he concluded that plaintiff was nevertheless capable of working under the conditions specified by his RFC assessment.  This finding is supported by substantial evidence.  See Landfried v. Apfel, 218 F.3d 743, 2000 WL 821361, at *4 (5th Cir. May 24, 2000) (per curiam) (unpublished) ("The ALJ's determinations of the weight and credibility of the evidence 'are entitled [to] considerable deference.'") (quoting Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987) (per curiam)).

Second, plaintiff claims that the ALJ failed to consider the effect of his obesity in conjunction with his hypertension, diabetes, and hernia pursuant to SSR 02-1p when assessing his RFC.  This claim is also unfounded.  SSR 02-1p requires an ALJ to consider the effects of

24

obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Titles II & XVI: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281, at *1.  Thus, an ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but instead must "evaluate each case based on the information in the case record."  Id. at *6.

Here, plaintiff's medical records are silent regarding his obesity, and he made no mention of it during the hearing.  Instead, he raised his condition as an issue for the first time when seeking review of the ALJ's 2010 decision.  Tr. 764.  In his decision, the ALJ acknowledged that plaintiff stood five feet and four inches while weighing 189 pounds, and noted that plaintiff was trying to lose weight.[6]  Though the ALJ did not specifically discuss how plaintiff's weight may have affected his ability to work, there is no evidence that it did, in fact, limit his ability to function in any meaningful way.  See Hobbs v. Astrue, 627 F. Supp. 2d 719, 726-27 (W.D. La. 2009) (finding that while the ALJ should have recognized plaintiff was obese based on his height and weight, "[he] did, in effect, consider the impact of [the plaintiff's] obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity.").  For example, plaintiff's medical records and his own testimony reveal that he is in good condition and capable of walking or standing for up to six hours each day.  He suffers no physical effects from his hypertension[7] or side effects from his medication, and he has recovered from his hernia surgery.  Because the ALJ's RFC assessment contemplated all the evidence

---

[6] Pursuant to SSR 02-1p, plaintiff would be categorized under Level I obesity with a body mass index of 32.4.  2002 WL 34686281, at *2; see also Body Mass Index calculator at http://www.nlm.nih.gov/medlineplus /ency/article/007196.htm.

[7] The ALJ noted that though plaintiff's blood pressure was uncontrolled, he had admitted to failing to take his medication for an entire year.  Tr. 777.

regarding plaintiff's health, and that evidence necessarily reflected the impact of his weight, the decision was supported by substantial evidence notwithstanding his failure to explicitly discuss plaintiff's obesity.

Third, plaintiff argues that the ALJ failed to consider how his medical treatment would interfere with his ability to adhere to a daily routine and therefore be able to fulfill the attendance requirements of most jobs. This claim is without merit. Though the ALJ did not directly address plaintiff's argument, his conclusion that he is capable of performing either his previous work or other sedentary jobs necessarily implies that he found plaintiff capable of regularly attending a job. See Batiste v. Astrue, No. H-08-3003, 2010 WL 1404113, at *14 (S.D. Tex. Mar. 31, 2010) (unpublished) ("In absence of an express finding, reviewing courts generally assume that assessments of RFC by administrative law judges include *implicit* findings of ability to work on a regular and continuing basis.") (emphasis in original) (citing Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam)). The vocational expert indicated that an employee who missed more than two days of work per month would be unable to maintain any job. However, there is no evidence that plaintiff would not be able to go to work every day. For example, the record does not indicate that plaintiff receives any particular treatment that would prohibit him from working on a daily basis. He takes his medications in the morning and before bed, and while he must clean his colostomy bag approximately three times a day, it only takes about ten to fifteen minutes. Moreover, plaintiff never indicated that he requires frequent or routine medical treatments that would otherwise prohibit him from working every day. Though the ALJ noted that plaintiff sometimes complains of weakness and fatigue, Tr. 777, he also found that plaintiff engages in a wide range of daily activities and that his doctor indicated he was doing well. Based on this evidence, the ALJ found by implication that plaintiff is capable of working every

day.  This conclusion is supported by substantial evidence and therefore plaintiff's claim is unfounded.

Fourth, plaintiff contends that the ALJ failed to consider the fact that he needs to clean his colostomy bag up to four times a day, and that this regimen would prohibit him from working a full day even with normal breaks.  Though the ALJ did not directly address this issue in his opinion, his conclusion that plaintiff is capable of performing either his previous work or other sedentary jobs necessarily implies that he determined plaintiff was capable of working a full day, notwithstanding his colostomy bag.  The vocational expert indicated that an employee who took breaks throughout the day exceeding those normally permitted, which include two fifteen-minute breaks and one thirty-minute or hour-long break for lunch, would have difficulty maintaining employment in any position absent an accommodation.  Tr. 949-50.  Though plaintiff insists that he is required to clean his bag *up to* four times a day, taking approximately fifteen minutes each time, his claim is contradicted by Dr. Briggs's testimony that it is required less frequently. Specifically, Dr. Briggs testified that on average a colostomy bag must be cleaned only two or three times a day, and usually only after a meal.  Tr. 936-37.  In light of this evidence, the ALJ implicitly found that plaintiff was not precluded from working a full day with normal breaks given the frequency and duration of his bag-cleaning regimen.  Because the ALJ was entitled to rely on Dr. Briggs's testimony, his conclusion was supported by substantial evidence.  See Cline v. Commissioner of Soc. Sec., 96 F.3d 146, 150 (6th Cir. 1996) (finding that ALJ's reliance on medical experts assessment regarding plaintiff's ability to adapt and adjust to work with a colostomy bag was supported by substantial evidence despite plaintiff's contradictory testimony).

In sum, the ALJ's RFC assessment took into account the record as a whole, including the

matters about which plaintiff complains.  Therefore, the Commissioner's RFC finding was based on substantial evidence and plaintiff's claims are dismissed.

> ### 3.     The Commissioner's determination regarding plaintiff's transferable skills was not error.

Finally, in regards to the ALJ's conclusion that plaintiff could perform other work, plaintiff alleges the ALJ erred by determining that his basic math, record keeping, and inventory documentation skills were transferable "skills" pursuant to SSR 82-41, because a skill goes beyond carrying out simple job duties.  (D.E. 17, at 4).  Defendant responds that because the ALJ found that plaintiff could perform past relevant work, the issue of transferability is moot.  (D.E. 18, at 2).

The Social Security Administration defines skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)."  SSR 82-41, 1982 WL 31389, at *2.  By contrast, unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).

At plaintiff's hearing, the ALJ asked the vocational expert whether any sedentary level occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and RFC as plaintiff, and, in addition, which do not require any skills exceeding those acquired in plaintiff's past relevant work.  The vocational expert indicated that such jobs do exist, including cashier, check cashier, and food checker.  The specific skills under consideration included use of basic math, record-keeping, documenting inventory, ordering supplies, and handling intake and deposits of money.

Plaintiff alleges that of these, basic math, record keeping, and inventory documentation

do not constitute "skills" within the meaning of the guidelines.  While perhaps basic math, standing alone, may not constitute a "skill," in plaintiff's case it is part of a bundle of other duties–including record-keeping, inventory documentation, supply ordering, and handling of money–which together rise above the level of carrying out simple job duties, and which are acquired through the performance of an occupation that is above the unskilled level.  Compare Burton v. Secretary of Health & Human Servs., 893 F.2d 821, 823 (6th Cir. 1990) (basic math, customer service, and inventory functions were transferable skills), with McBurrows v. Commissioner of Soc. Sec., 928 F. Supp. 724, 727-28 (E.D. Mich. 1996) (explaining that "[d]epth perception, hand-foot-eye coordination, and 'independence of judgment or responsibility for a work product' are not job skills but aptitudes") (quoting Cole v. Secretary of HHS, 820 F.2d 768, 773 (6th Cir. 1987)).  In particular, the skills identified by the ALJ all require judgment, discretion, and responsibility.  Therefore, the ALJ did not err in characterizing plaintiff as having certain job skills.

In sum, because plaintiff's claims are meritless and the Commissioner's decision was otherwise supported by substantial evidence, plaintiff is not entitled to summary judgment and his claims are dismissed.

**B.     Defendant's Motion For Summary Judgment Is Granted.**

Defendant seeks summary judgment on the basis that the Commissioner's decision was supported by substantial evidence.  In light of the foregoing discussion, defendant's motion is granted.

## V.  <u>CONCLUSION</u>

For the reasons stated herein, plaintiff's motion for summary judgment, (D.E. 17), is denied, and defendant's motion for summary judgment, (D.E. 14), is granted.  It is therefore ORDERED that this action be dismissed.

ORDERED this 8th day of October 2012.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE